IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GEORGE WASHINGTON,
   *Plaintiff*,

v.

MAX MOGHEES,
   *Defendant*.

Civil Action No. ELH-18-1491

**MEMORANDUM OPINION**

Plaintiff George Washington, who is self-represented, filed suit against defendant Max Moghees, an employee of "JBA dealership" ("JBA").[1] ECF 1 (the "Complaint"). Washington asserts various claims arising out of his purchase and financing of a vehicle that he bought from JBA on July 30, 2017. *Id*. Specifically, Washington alleges that JBA "tricked [him] into accepting . . . the purchase of a used veh[icle]" and has arranged "an illegal interest rate and finance charge[]" with the auto lender, Ally Bank. *Id*. Plaintiff appended several exhibits to the suit. *See* ECF 1-2.

Moghees has moved to dismiss the Complaint for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 6. The motion is supported by a memorandum of law. ECF 6-1 (collectively, the "Motion"). Moghees contends, among other things, that this Court lacks diversity jurisdiction

---

[1] The correct name is Gladding Chevrolet, Inc., t/a/ JBA Chevrolet. ECF 11-1 at 21.

over plaintiff's claims.[2] ECF 6-1 at 6-7. In response, Washington filed an "Affidavit of Truth" (ECF 11), supported by an exhibit.[3] ECF 11-1. Moghees has replied. ECF 12 (the "Reply").

A hearing is unnecessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Factual Background[4]

Washington is "a proud resident of the State of Maryland." ECF 1 at 1. Moghees is an employee of JBA, located in Glen Burnie, Maryland. *Id*. Washington maintains that JBA is a part owner of Ally Bank. *Id*. at 2. According to plaintiff, JBA is "using the bank name to extort money from it[s] customers." *Id.*

Washington alleges that he was "verbally misinformed / tricked into accepting [the] contract of the purchase of a used veh[icle] 2014 Chevrolet Suburban LT with 36000 plus miles . . . ." *Id.* at 1. Prior to the purchase, Washington claims that he "asked Mr. Max [Moghees] about the monthly payment of [$]899.92, what amount went to the principle [sic] and the interest rate and his reply was that he didn't know but to wait for the bank to call me." *Id*.

---

[2] In a footnote, defendant appears to raise a Rule 12(b)(5) defense for failure to effect service of process, contending that plaintiff "has failed to obtain proper service of process" on Moghees. ECF 6-1 at 2 n.2. However, as discussed below, it is unnecessary to address this issue.

[3] On September 20, 2018, Washington filed a Motion for Extension of Time (ECF 8), claiming that he did not receive a copy of the Motion to Dismiss until September 18, 2019. He filed his Second Motion for Extension of Time (ECF 9) on October 25, 2018. Moghees opposed the request (ECF 10), arguing that plaintiff has sought "inordinate time to collect facts and documents that have no bearing on the issues presented . . . ." *Id.* at 1. On November 16, 2018, while the extension motion was pending, Washington filed a 16-page "Affidavit of Truth" and 22 pages of exhibits. ECF 11; ECF 11-1. I have construed the submission as the opposition to the Motion to Dismiss. Therefore, I shall deny, as moot, Washington's motions for extension (ECF 8; ECF 9).

[4] Because this case is at the motion to dismiss stage, I shall assume the truth of any well-pleaded facts alleged in the Complaint.

Ally Bank never contacted Washington. ECF 1 at 1. But, plaintiff "kept calling" until he eventually received a response. *Id.* Washington was told that if he made his vehicle payments on time every month, Ally Bank would allocate $500 to the principal balance of his auto loan, and the remainder "would go to the interest rate." *Id*. at 1-2.

Plaintiff states that he "never pay attention to [the] monthly payment," but he noticed that the "numbers [were] not matching." *Id*. at 2. According to plaintiff, Ally Bank failed to allocate the proper amount of his monthly payment to the principal balance of his loan. *Id*. As a result, Washington called Ally Bank "to make corrections." *Id*. In response, "[t]he bank said that this is how the JBA dealership wanted it to be/setup [sic], that the interest rate on this [vehicle] is triple[] the amount of the principle [sic] plus the finance charges . . . ." *Id*.

The Complaint asks the Court to intervene "with a trial date for a civilized settlement agreement to all parties to resolve this" and to order the Federal Bureau of Investigation to commence an investigation of JBA.[5] Notably, plaintiff fails to specify the basis for jurisdiction in federal court.

Additional facts are included in the Discussion.

## II. Legal Standards

### A. Rule 12(b)(1)

A challenge to a federal court's subject matter jurisdiction is reviewed pursuant to Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642,

---

[5] As defendant points out, ECF 6-1 at 3 n.2, I do not have the authority to grant such relief.

647 (4th Cir. 1999). A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quotation marks and citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see also Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

With respect to Moghees' contention that Court lacks diversity jurisdiction over plaintiff's claims, Moghees seems to raise a facial challenge. Therefore, I shall assume the truth of Washington's allegations. *Id*.

### B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom. McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555.

To be sure, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam). Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint is insufficient if it provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very

remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Belmora, LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In general, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The purpose of the rule is to ensure that defendants are "given adequate notice of the nature of a claim" made against them. *Twombly*, 550 U.S. at 555-56 (2007). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009); *see also U.S. ex rel. Oberg v. Penn. Higher Educ. Assistance Agency*, 745 F.3d 131, 148 (4th Cir. 2014). However,

because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman*, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis added in *Goodman*).

To survive a motion to dismiss, a complaint, relying on only well-pled factual allegations, must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). To determine whether a complaint has crossed "the line from conceivable to plausible," a court must employ a context-specific inquiry, drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 679-80.

Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ." *Goines*, 822 F.3d at 166 (citations omitted); *see also U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). A court may also take judicial notice of matters of public record. *Philips*, *supra*, 572 F.3d at 180.

However, "before treating the contents of an attached or incorporated document as true,

the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *petition for cert. filed*, No. 17-492 (Oct. 3, 2017); *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

The Court is mindful that the pleadings filed by self-represented litigants, such as plaintiff, are "held to less rigorous standards than formal pleadings drafted by lawyers." *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). Moreover, courts are charged with liberally construing a complaint filed by a self-represented litigant to allow for the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). But, liberal construction does not mean a court can ignore a clear failure to allege

facts that set forth a cognizable claim. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387 (4th Cir. 1990).

### C. Exhibits

Plaintiff submitted several documents with his Complaint, including statements of monthly loan payments made by him to Ally Bank. *See* ECF 1-2 ("Exhibit") at 1-3. A statement of December 17, 2017, shows payment of $899.92, of which $835.89 was allocated to finance charges and $64.03 was apportioned to the loan balance. The remaining loan balance was $43,635.97. *Id.* at 1. A statement dated September 28, 2017, reflects that on that date, plaintiff paid $899.92, inclusive of a $249.51 finance charge and $650.41 of principal. *Id.* at 2. And, the remaining loan balance was $43,700.00. *Id.* A statement of April 27, 2018, provides that on April 19, 2018, Washington paid $899.92, inclusive of a $766.66 finance charge and $133.26 for the principal, leaving an outstanding loan balance of $41,583.10. *Id.* at 3.

The Exhibit also includes a copy of Washington's "Premier Maintenance Plan." Plaintiff purchased the maintenance for his vehicle on July 3, 2017, at a cost of $799. That cost was included with the loan financing. *See* ECF 1-2 at 4-5.

In addition, plaintiff appended to his suit a copy of the "Retail Installment Sale Contract," pursuant to which he purchased and financed his vehicle. ECF 1-2 at 8-11. The contract plainly reflects that on July 3, 2017, Washington purchased a "used" 2014 Chevrolet Suburban from "Gladding Chevrolet, Inc. t/a JBA Chevrolet." *Id.* at 8, 11. This description refutes the claim that plaintiff was tricked into buying a used car. In addition, it shows that the total cash price for the vehicle, including a $300 dealer processing charge, was $40,799. *Id.* at 9. Washington paid a $2,500 cash down payment, and financed the balance of $44,956.94, which included a purchase

price of $40,799.00, plus taxes, fees, and insurance costs, as well as the maintenance plan. ECF 1-2 at 8-9.

Moreover, the contract provided that the annual interest rate for the loan was 13.69%. *Id.* And, it indicated that Washington would have to make a total of 75 monthly payments of $899.92, beginning on August 17, 2017. *Id.*

Plaintiff signed the contract. *Id.* at 11. Above his signature, it says, in bold, in part: "You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages . . . ." *Id.*

Also, plaintiff included several documents with his Affidavit of Truth. These include: "Certificate of Service," certifying that on November 16, 2018, Washington served Moghees at JBA's address (ECF 11 at 3); "Confirmation of Accidental Physical Damage Insurance," signed by Washington on July 3, 2017 (*id.* at 4); "Odometer Disclosure Statement," signed by Washington on July 3, 2017 (*id.* at 5); "Restricted Power of Attorney," signed by Washington on July 3, 2017 (*id.* at 6); a customer due slip, signed by Washington on July 3, 2017 (*id.* at 7); "Ally Premier Protection – Maryland Contract Registration," signed by Washington on July 3, 2017 (*id.* at 8-9); "Conditional Delivery Notice – Purchase/Lease," signed by Washington on July 3, 2017 (*id.* at 10); a JBA fact sheet on how the dealership handles customers' personal information (*id.* at 11-12); "MVA Application for Certificate of Title," signed by Washington on July 3, 2017 (*id.* at 13-14); and a document describing the various roadside assistance plans provided by "OnStar" (*id.* at 15-16). Plaintiff also appended to his Affidavit of Truth additional copies of the documents that he attached to his Complaint. *See* ECF 11-1 at 1-22.

### III. Discussion

Federal courts are courts of limited jurisdiction. *Home Buyers Warranty Corp. v. Hanna,* 750 F.3d 427, 432 (4th Cir. 2014) (quotation marks omitted) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)). Thus, a federal district court may only adjudicate a case if it possesses the "power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005) (internal quotation marks omitted). As the Fourth Circuit stated in *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008), if a party seeks to proceed in federal court, it "must allege and, when challenged, must demonstrate the federal court's [subject matter] jurisdiction over the matter." Indeed, "if Congress has not empowered the federal judiciary to hear a matter, then the case must be dismissed." *Hanna,* 750 F.3d at 432.

Put another way, "[a] court is to presume . . . that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper." *United States v. Poole,* 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen,* 511 U.S. at 377). Even where no party challenges subject matter jurisdiction, a federal court has "an independent obligation to determine whether subject-matter jurisdiction exists." *Hertz Corp. v. Friend,* 559 U.S. 77, 94 (2010).

Under the "well-pleaded complaint" rule, facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint." *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) (citing *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178 (1936)). Put another way, "before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).

Of import here, the "burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction." *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); *accord Hertz*, 599 U.S. at 95; *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010).

For example, "the mere assertion in a pleading that the case is one involving the construction or application of the federal laws does not authorize the District Court to entertain the suit'. . . ." *Burgess v. Charlottesville Savings and Loan Ass'n*, 477 F.2d 40, 43 (4th Cir. 1973) (citations omitted).

As explained below, Washington has failed to demonstrate a basis for federal jurisdiction.

Congress has conferred jurisdiction on the federal courts in several ways. To provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction over civil actions that arise under the Constitution, laws, or treaties of the United States. *Exxon Mobil Corp.,* 545 U.S. at 552; 28 U.S.C. § 1331. *See also* U.S. Constitution Art. III, § 2 ("The Judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made . . ."). This is sometimes called federal question jurisdiction.

The Complaint fails to sufficiently plead a federal claim. *See* ECF 1 at 1-2. Plaintiff does not cite a federal statute or the Constitution as the basis for his suit. And, it is not the function of this Court to undertake an effort to discern a federal statute that would support this suit in federal court.

Defendant asserts: "The only three claims that can be possibly discerned from Mr. Washington's Complaint are state-law claims." ECF 6-1 at 6. Those are (1) "that he was tricked into accepting the Contract (negligent/fraudulent misrepresentation); (2) the dealership has arranged to receive a 'criminally' high payment (usury); and (3) that Ally Bank has assessed an improper finance charge (breach of contract)." *Id*. at 3. As cast, these are State law claims. *See, e.g., Lloyd v. Gen. Motors Corp*, 397 Md. 108, 136, 916 A.2d 257, 273 (2007) (negligent

misrepresentation); *RRC Northeast, LLC v. BAA Md., Inc.*, 413 Md. 638, 655, 994 A.2d 430, 441 (2010) (breach of contract); *Green v. H & R Block, Inc.*, 355 Md. 488, 525, 735 A.2d 1039, 1059 (1999) (fraudulent concealment); Md. Code (2013 Repl. Vol., 2017 Supp.), §§ 13-101 *et seq.* of the Commercial Law Article (usury).[6]

In addition, "Congress . . . has granted district courts original jurisdiction in civil actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens," so long as the amount in controversy exceeds $75,000. *Exxon Mobil Corp.,* 545 U.S. at 552; *see* 28 U.S.C. § 1332. However, diversity jurisdiction "requires complete diversity among parties, meaning that the citizenship of *every* plaintiff must be different from the citizenship of *every* defendant." *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC,* 636 F.3d 101, 103 (4th Cir. 2011) (emphasis added); *see Strawbridge v. Curtiss,* 7 U.S. 267 (1806).[7]

The citizenship of the litigants is central when diversity jurisdiction is invoked. *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998). Notably, "state citizenship for diversity jurisdiction depends not on residence, but on national citizenship and domicile." *Id*. (citation omitted). And, "the existence of such citizenship cannot be inferred from allegations of mere residence, standing alone." *Id*; *see also Robertson v. Cease*, 97 U.S. 646, 648 (1878) ("Citizenship and residence, as often declared by this court, are not synonymous terms.").

---

[6] The Court does not mean to suggest that plaintiff's assertions are limited to the State law claims that defendant discerns from the suit.

[7] Under 28 U.S.C. § 1367(a), district courts are also granted "supplemental jurisdiction over all other claims that are so related to claims in the action within [the courts'] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

In other words, for "purposes of diversity jurisdiction, residency is not sufficient to establish citizenship." *Johnson v. Advance Am., Cash Advance Ctrs. of S.C., Inc.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008). Rather, a U.S. national is a citizen of the state where the person has his or her domicile, which "requires physical presence, coupled with an intent to make the State a home." *Id.*

Based on the Complaint, it appears that both Washington and Moghees are Maryland citizens.

As noted, the Complaint asserts that plaintiff is a "Maryland resident" but is silent as to Moghees' citizenship. ECF 1 at 1. The caption of the Complaint includes only JBA's address: "Max Moghees of JBA Dealer[,] 7327 Ritchie Highway, Glen Burnie MD 21061." *Id*. Notably, defendant's Motion maintains that Moghees is a Maryland resident. *See* ECF 6-1 at 6. However, as discussed, with regard to natural persons, a party's citizenship for diversity purposes depends not on residence but rather on domicile. *See Axel*, 145 F.3d at 663. But, in the context of this case, it seems that residence and domicile are one and the same.

Assuming that the domicile of each party is the same as his residence, the Complaint plainly does not allege *complete* diversity of citizenship. With exceptions not applicable here, and as noted, diversity jurisdiction under 28 U.S.C. § 1332 "requires complete diversity among parties, meaning that the citizenship of *every* plaintiff must be different from the citizenship of *every* defendant." *Cent. W. Va. Energy Co.*, 636 F.3d at 103 (emphasis added). Moreover, plaintiff has not pleaded damages in excess of $75,000. Therefore, on the

face of the Complaint, plaintiff has pleaded insufficient facts to support diversity jurisdiction.[8]

Accordingly, Moghees' Motion to Dismiss (ECF 6) is granted, without prejudice, and with leave to amend. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013). The Court will grant plaintiff until December 27, 2018, to amend his Complaint, either to establish diversity or federal question jurisdiction.

### IV.  Conclusion

For the reasons stated above, I shall GRANT Moghees' Motion to Dismiss (ECF 6), without prejudice, pursuant to Fed R. Civ. P. 12(b)(1), and with leave to amend.

An Order follows.

Date:   December 4, 2018                                             /s/
                                                        Ellen Lipton Hollander
                                                        United States District Judge

---

[8] Because this Court lacks subject matter jurisdiction, it is unnecessary to address defendants' contentions as to Fed. R. Civ. P. 12(b)(6).